The opinion of the court was' delivered by
Tilghman, C. J.
This case came before us, on a rule on the defendant to show cause why an information in the nature of a Quo Warranto should not be filed against him, for assuming and exercising the office of treasurer of Lancaster county.
The defendant has assigned several reasons against an information, the first of which is, that his case is not within the provisions of *217 the act of 12th of April, 1825, on which the rule was founded. At the time of the passing of this act, the defendant was treasurer of Lancaster county, and the question is, whether he was obliged, by the third section of the act, to settle his account as treasurer, on or before the second Tuesday of December, in the year 1825. If he was, it is confessed that he was a defaulter, and the commissioners had no right to appoint him treasurer for the year 1826. The words of the third section are general, “ that it shall be the duty of the treasurer of each and every county within this commonwealth, to settle his account, as treasurer, for all moneys by him received for this commonwealth, for tavern licenses, or otherwise, on or before the second Tuesday in December, in each and e,very year.”
But it is contended on behalf -of the defendant, that from the whole spirit and intent of the act; these general expressions are to be confined to treasurers appointed after the 1st of January. 1826. The main object of the act appears to have been, to produce uniformity in the time of the appointment of all county treasurers in the commonwealth, and in the tiijne of the settlement of their accounts. The times of appointment had been various in different counties, and this occasioned a difficulty in ascertaining who was the treasurer of any particular county in the beginning of each year, which was embarrassing to the auditor general and state treasurer. The appointments of county treasurers for the year 1825, had all been made, previous to the passing of the act of 12th of April. 1825, and consequently it was impossible to effect a uniformity in the time of appointment of^ those officers for that year. The first section of the act is prospective, and exclusive of the year 1825. It enacts, that “ from and after the 1st day of January next, (1826) it shall not be lawful for the judges of the courts of General Quarter Sessions of the peace, or Mayor’s Court, to grant any licenses to tavern keepers, at either of the two last courts of Quarter Sessions, holden in any year, and all applications for tavern licenses shall be made at the first and second terms of each and every year hereafter.” The object of this must have been to enable the county treasurers to settle their accounts by the second Tuesday in December, which it would have been difficult to do, if licenses had been granted at the two last terms of the year ; because these licenses frequently remained in the hands of the treasurer several months before they were taken out, and paid for by the tavern keepers, and the mode of compel-, ling payment, was, by indicting them at the succeeding term, if they had kept taverns in the mean time without taking out a license. Clearly, therefore, this first section was intended for the cases of treasui'ers appointed after the year 1825.
The second section, directs the commissioners of each county to appoint a treasurer in the first week of January in every year thereafter, and enacts, that the treasurers so appointed' shall hold *218 tbeir offices for one year and no longer, and that all treasurers appointed during that year (1825) shall continue in office until the 31st of December, 1825, and no longer. This section secures uniformity in the time of the commencement and expiration of the offices of all county treasurers, who should be appointed on or after the 1st of January, 1826. Then comes the 3d section, on which the present question arises. Besides ordaining that the treasurers of each county should settle their accounts on or before the second Tuesday of December in each year, it inflicts a penalty on every treasurer who shall not so settle ; viz. he shall not be re-appointed to the office of treasurer, neither shall he be re-appointed unless he produce a certificate from the auditor general, and state treasurer of his account being so settled, and all moneys due by him paid to the state treasurer, — nor shall any treasurer be allowed a commission by the accountant department, who omits to pay over all moneys by him received, or which he ought to have received, before the second Tuesday in December in each year. Now it could be a matter of but little importance to the commonwealth, whether this third section did or did not comprehend treasurers appointed before the 1st of January, 1826, and it cannot be supposed that harsh and unreasonable terms should be imposed on such treasurers, without an adequate object. To alter the duties of an officer who was to remain in office but part of a year, and that too, in points very material to him, would certainly savour of hardship. And this remark is much more forcible when applied to the sureties of the treasurer, who became responsible for him on the faith of the law as it existed at the time of their being bound for his faithful execution of the duties of his office. A few weeks difference in the time of settlement, or of payment, might occasion the forfeiture of the bond. So that I should be strongly inclined to the opinion, that the defendant’s case was not within the act, if it rested only on the third section. But when we consider the fourth section we shall find that light is thrown on the third, and the argument grows very strong that the general expressions, “ treasurers of each and every county,” should be restricted to treasurers appointed after the year 1825. The fourth section directs, that athe auditor general shall cause suits to be instituted against the present and prior county treasurers heretofore appointed, who may be delinquent, and who may, or have refused to settle their accounts, and pay over all moneys on every license heretofore granted, or which may be granted by any court within this commonwealth during the present year, agreeably to the usages of the accountant department.” Now here is a plain distinction between treasurers appointed for the year 1825, and those who. should be afterwards appointed. • The former were to be sued, unless they settled their account for all tavern licenses granted during the year 1825, and paid the money over, according to the usages-of the accountant department. It was as *219 serted by the counsel for the defendant, and I think not contradicted by the adverse counsel, that it was the usage of the' accountant department, to allow three months from the end of each year, for payment of the money due on licenses granted at the last term in the year, because in fact, many of those licenses, although transmitted to the treasurer from the Court of Quarter Sessions, were not taken out, and paid for, by the tavern keepers, until after the end of the year. If this be so, it shows clearly, that treasurers appointed for the year 1825, could not have been required by the third section, to settle their accounts by the second Tuesday in December, and make payments in full to the treasurer, by the 31st of December in each year. There is an inconsistency between the third and fourth sections, if we apply them both to the case of treasurers appointed for the year 1825, and it is a sound rule so to construe every instrument as to retain all its words, and if possible, preserve consistency in all its paits. I am of opinion, therefore, that the case of the defendant, is not within the provisions pf the act o£tHe 12th of April, 1825. But even if it were, it would be indiscreet to proceed against him by information, because it is certain, that the cause could not come to trial by a jury until after the expiration of his office. The granting of an information of this kind is discretionary, and why should the court waste time in a fruitless prosecution? The cases cited from 2 Johns. 184, and 3 Mass. Rep. 385, show the opinion of the Supreme Courts of New York and Massachusetts on this point, and I agree with them. The counsel for the defendant urged two other reasons against an information, on which I give no opinion, because it is unnecessary. I am of opinion that sufficient cause has been shown by the defendant; and, therefore, the rule should be discharged.
Rule discharged. •